**Exhibit A**

Expert Report of Lezlee Liljenberg

I have been asked to express my opinions in the case of *Donald Klees and Carolyn Klees v. Arthur J. Gallagher & Company*, an Illinois Corporation, pending in the United States District Court for the District of Colorado, Civil Action No.: 1:21-cv-02392-RMR-MEH. I provide the following opinions to a reasonable degree of professional certainty based upon my 18 years working in the insurance industry. My experience is outlined on my *curriculum vitae* which is included as Exhibit B. I have reviewed the materials listed on Exhibit C, and those materials form the basis for the opinions expressed in this case. My prior testimony list is included as Exhibit D.

This case involves a dispute over whether Arthur J. Gallagher & Company and its representative, Sid Veale, breached its duties and obligations under the Colorado Department of Agencies-Division of Insurance. Based on my review of the materials in this case, it is my opinion that Gallagher and Veale met the professional standards of care and competence expected of insurance producers/agents under Colorado law. It is anticipated that my testimony will include that the acts of or alleged acts of omission of Gallagher & Company were not deceptive or fraudulent, nor did the Defendants intentionally or knowingly misrepresent the policy coverage and were not a proximate or producing cause of any alleged injury by Plaintiff.

It is further anticipated that I will opine that it was the Plaintiff's Duty to Read and exercise reasonable care in reviewing the proposal and policy. Plaintiff did review and sign the Authorization to Bind, and, therefore, is presumed to know its contents. It is Plaintiff's acts or omissions that were the sole proximate cause or factor of any result or injury. While an insurance agency customer may rely on its insurance agent's promises to a degree, the customer cannot

1

EXHIBIT I - REPORT OF LEZLEE LIJENBERG

abandon all responsibility for ascertaining the terms of the coverage that the agency has obtained.

Specifically, the Plaintiff made the choice to switch for "cheaper" pricing. Plaintiff provided Veale with a Fireman's Fund "Summary of Proposed Premiums" which showed the limits and basic coverages of the policy but was not the entire policy jacket. If obtaining higher dwelling limits had been of utmost concern to the Kleeses, the inception of the policy would have been the time to review and question the variance before the fire. Gallagher and Veale did provide an analysis based on the limited information provided by Plaintiffs. The documentation provided by Plaintiffs did not mention an inflation index/factor. A broker is not required to perform a legal analysis comparing policy terms when the insured does not provide the complete policy. A broker is not required to request a complete copy of a prior policy before placing coverage. An insurance broker must rely on the accuracy of the information provided by the insured. If information, such as square footage, is inaccurate, this would impact any analysis on appropriate insurance coverage. Also, Westfield conducted an inspection of the property before the fire as discussed below.

According to the testimony of Ms. Nancy Tulley (Page 26, Lines 18-20), Tulley and the team based in India, created, and sent Mrs. Klees an "Authorization to Bind". It is my understanding that Mrs. Klees would have signed this document prior to Veale binding the policy. Though there is no obligation for the client to sign an "Authorization to Bind". However, signing this authorization would serve as her permission to accept the coverages and provided another opportunity to review and/or ask questions concerning the dwelling amount. In the months after placement of the insurance policy, Plaintiffs never called to change the amount of

2

EXHIBIT I - REPORT OF LEZLEE LIJENBERG

coverage or state that the policy limits were less than Plaintiffs had requested. Plaintiffs never said that the policy limits placed were lower than requested. The fire occurred in October of 2020, four months after Plaintiffs received the policy. If Plaintiffs believed the limits of liability were too low, Plaintiffs should have contacted Gallagher, Veale and/or Westfield and requested that the policy limits be raised.

There is no evidence of negligence on behalf of Gallagher or Veale regarding the actual calculations of Replacement Cost for the property in this case. These calculations fall within the formulas utilized by the carrier, Westfield Insurance. Westfield Representative, Mr. Danisewicz, inspected the property and determined a slight variation for the dwelling coverage. The difference equated to $92,000 and was adjusted on the policy. The accusation that the parties unreasonably failed to communicate the difference is not relevant in relation to the exorbitant amount the Plaintiffs are claiming as loss based on the estimates of $3.9M, $4.0M and $4.1M to rebuild. An insurer only is required to pay up to the limits of liability, regardless of the actual cost of replacement or repair. No further payment for these limits is justified.

In addressing the allegations that the Plaintiff has suffered Damages that would not have existed should they have continued coverage with Fireman's Fund, no proof exists that this would have occurred. Even Mr. Winans concedes that for some portions of the claim, the Fireman's Fund policy would have paid less than the Westfield policy. It is merely an assumption of how Fireman's might have handled the loss or paid the claim.

As far as the non-renewal by Westfield, Mr. Rohrer made this decision based on an issue "upsetting" him concerning the "trail rides". I saw no evidence as to who created the Supplemental Equine Application. Westfield could not identify where the unsigned and undated Supplemental Equine Application came from; therefore, Westfield should not have relied on it in

3

EXHIBIT I - REPORT OF LEZLEE LIJENBERG

making underwriting decisions. Rohrer decided not to renew the policy due to a circumstance other than the fire, but the claimed trail rides misrepresentation was not the deciding factor. Mr. Rohrer testified that the risk after the fire was beyond Westfield's tolerance range. The situation concerning the "trail rides" could have been remedied and neither Gallagher nor Veale had any control or direct responsibility of Mr. Rohrer's decision to non-renew on behalf of Westfield Insurance. There are many reasons an underwriter may chose to increase premiums, non-renew policies or include exclusions and endorsements to offset catastrophic and/or total losses on behalf of the carrier. In this particular case, which is very pertinent to the false allegations surrounding the non-renewal, the coverage was not denied due to the "trail rides" and is not applicable to the cause of loss.

It is not uncommon after a total loss for a consumer to have difficulty finding an admitted market to insure their home or business after this type of loss. As Mr. Winans' report mentions, Fireman's Fund abandoned this line of coverage. Many admitted market carriers will chose to leave the market completely after severe and catastrophic losses, such as occurred during the East Troublesome Fire where more than 300 homes and between 100 and 200 other structures were destroyed in the blaze. These non-admitted carriers are willing to take on the risk that admitted carriers prefer to avoid. Therefore, the premiums are often higher considering they are accepting high-risk circumstances. There exists no direct correlation to the non-renewal of the Westfield policy to the cause of the Kleeses having to obtain insurance via a Surplus Line carrier, such as Scottsdale. It is also pure speculation that should Westfield have decided to renew the Klees' policy it would have been at the same premium prior to the total fire loss. It is very likely that Westfield underwriting would have reevaluated their position and increased

EXHIBIT I - REPORT OF LEZLEE LIJENBERG

premiums to mitigate the carrier's risk. Often these factors are unknown until the policy is offered for renewal.

The fact remains that whether the policy is for Actual Cash Value or Replacement Cost Value there exist Limits of Liability to which the carrier will adhere. There appears to be no evidence of negligence or misrepresentation by Gallagher or Veale in this matter.  Both Gallagher and Veale acted reasonably under the circumstances.  With the passing of Veale, any purely verbal communications by him to Plaintiffs cannot be corroborated. Veale gathered the typical information generally needed to prepare a request for quote on behalf of an insured in accordance to Best Practices in the insurance industry.  This information went into underwriting, and it does not appear as though Westfield Insurance nor the Plaintiff sought any additional information or documentation concerning the dwelling coverage amount.

In conclusion, based on the documentation, it is my opinion that Gallagher and Veale met the professional standard of care and competency commonly expected of an insurance agent/broker, and this level of care and competency was appropriately fulfilled in this case. This completes my report based upon the opinions I have been asked to render to date. It is my understanding that discovery is continuing, and new facts may come to light, new defenses may be offered, or new assertions may be made by the parties. I also may be asked to review additional materials. Considering these circumstances, it may be necessary for me to render additional opinions. It is also my understanding that I may be asked to testify in rebuttal of opinions offered by witnesses. Thus, I respectfully reserve the right to supplement this report.

EXHIBIT I - REPORT OF LEZLEE LIJENBERG

Respectfully Submitted,

*Lezlee Liljenberg*

_____
Lezlee Liljenberg
Liljenberg Insurance & Real Estate Consultant &
    Expert Witness
6612 Martha's Vineyard Drive
Arlington, TX 76001